IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. BRETT ALLEN BALDWIN, Defendant. | Case No. CR11-2029 ORDER FOR PRETRIAL DETENTION |

On the 13th day of July, 2011, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Justin Aaron Lightfoot. The Defendant appeared personally and was represented by his attorney, Chad R. Frese.

## I. RELEVANT FACTS AND PROCEEDINGS

On June 23, 2011, Defendant Brett Allen Baldwin was charged by Indictment (docket number 3) with conspiracy to manufacture methamphetamine. At the arraignment on June 28, 2011, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on August 29, 2011. The Government requested Defendant be detained pending trial. Defendant initially waived his right to a detention hearing. On July 8, 2011, however, Defendant asked for a hearing. A detention hearing was scheduled on July 13, 2011.

At the hearing, Clear Lake Police Officer Ryan Eskildsen testified regarding the circumstances underlying the instant charge.[1] On November 19, 2010, Eskildsen was contacted by the Mitchell County Sheriff's Office regarding a methamphetamine lab. Specifically, a melted bottle was found at the side of the road. Witnesses placed Defendant and his co-defendant Mark Zieman at the side of the road where the bottle was found. The

---

[1] For the past two years, Officer Eskildsen has assisted the North Central Iowa Narcotics Task Force.

1

bottle was sent to the DCI crime lab, and was found to be consistent with a one-pot methamphetamine lab.

At some time after November 19, 2010, Zieman was interviewed by Officer Eskildsen. According to Zieman, he and Defendant were driving in a vehicle with a one-pot methamphetamine lab. Zieman told Eskildsen that while Defendant was mixing the chemicals, a fire started and then blew up. Defendant's hands were severely burned, and Zieman drove him to the hospital.

Defendant was also interviewed by Officer Eskildsen. At his first interview, Defendant denied any involvement or knowledge of the incidents involving the one-pot methamphetamine lab on November 19, 2010. At a second interview, however, Defendant admitted his involvement in cooking methamphetamine on November 19. Defendant also admitted supplying a cold pack and lithium batteries for the one-pot methamphetamine lab. Defendant denied providing pseudoephedrine on November 19, but admitted providing pseudoephedrine for an earlier methamphetamine lab. Logs showed that Defendant purchased pseudoephedrine nine days earlier. Text messages on Defendant's phone from November 19 were also consistent with making methamphetamine on that date.[2]

According to the pretrial services report, Defendant is 24 years old. He has lived his entire life in Osage, Iowa. Defendant is single, has never been married, and has no children. Prior to his arrest, Defendant lived with his mother and her boyfriend in Osage. When he was arrested, Defendant had been unemployed for about one month. Prior to his unemployment, Defendant worked several jobs for short periods of time. His most recent long-term employment lasted from July 2009 to August 2010 at the Super 8 Motel in Osage.

Defendant is in good physical health. He has no past or present mental health or emotional concerns. Defendant told the pretrial services officer that he was a regular user

---

[2] Replying to a text message asking what he was doing, Defendant stated that he was "Working on shaking one up." Officer Eskildsen testified that Defendant's statement was slang for a one-pot methamphetamine lab.

of marijuana, and had used marijuana on a daily basis since he was 12 years old. His last use was on the day prior to his arrest. Defendant also reported using methamphetamine since 2004. According to Defendant, he used methamphetamine daily from 2004 to 2006, but reduced his usage to once per month beginning in 2007, and until his last use in August 2009.

As a juvenile, Defendant was apparently charged in separate incidents with theft, trespass, burglary, public intoxication, and possession of marijuana and drug paraphernalia. However, he was never adjudicated delinquent. On August 6, 2004, 14 days after his 18th birthday, Defendant was charged and later convicted of second degree theft.[3] In November 2004 and January 2005, while on bond release, Defendant was charged and later convicted of under age possession of alcohol. In May 2005, Defendant received a deferred judgment on his second degree theft charge, with 2 years probation. In August 2006, while on probation for the second degree theft charge, Defendant was charged and later convicted of harassment by communication. Defendant failed to appear for the trial, and an arrest warrant was issued and later served. In October 2006, Defendant was placed at the Beje Clark Residential Center. In November 2006, Defendant was charged and later convicted of voluntary absence/escape. He was returned from escape to the Beje Clark Center in December 2006. In January 2007, Defendant was again charged with escape.[4] Later that month, he was returned from escape and held in jail. In February 2007, Defendant's deferred judgment on the second degree theft charge was revoked, and he was sentenced to 5 years in prison, suspended, and given 5 years probation. In March 2007, Defendant's probation was modified, and he was placed in the violator's program. In September 2007, Defendant was released from the violator's program. In March 2009, Defendant's probation was revoked, and he was sentenced to 5 years in prison. According to the pretrial service report, Defendant's probation was

---

[3] Defendant was also charged with third degree burglary, but that charge was later dismissed.

[4] This charge was later dismissed.

revoked because he escaped from the residential facility on two occasions, failed to follow through with substance abuse treatment, failed to attend meetings with his probation officer, and provided urine and saliva samples which tested positive for marijuana, cocaine, and methamphetamine. He was paroled in July 2009. His parole was discharged in April 2010.

On November 19, 2010, Defendant was charged in state court with third degree arson, conspiracy to manufacture methamphetamine, and manufacturing methamphetamine. These charges were based on the incident relating to the instant federal charge. Shortly before the filing of the instant Indictment, all of the state charges were dismissed. On December 24, 2010, while the state charges were pending, Defendant was separately charged and later convicted of disorderly conduct and interference with official acts.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger

5

to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of 10 years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to manufacture methamphetamine. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, the weight of the evidence against Defendant is strong. On November 19, 2010, a fire occurred in a vehicle. Witnesses placed Defendant and his co-defendant at the scene of the fire. A melted bottle found at the scene was tested at a crime lab, and was found to be consistent with a one-pot methamphetamine lab. Defendant admitted providing some of the ingredients necessary to manufacture methamphetamine, and attempting to manufacture methamphetamine on November 19. Text messages from Defendant's phone on November 19 also suggest that Defendant attempted to make

methamphetamine on that date. Drug logs reflect Defendant's purchase of pseudoephedrine nine days earlier.

As a general proposition, the cooking of methamphetamine poses a serious risk and danger to the community. This case is illustrative of that fact. The Court also finds it significant that Defendant has a history of repeatedly failing to comply with conditions of pretrial release and probation. Specifically, Defendant has been on escape status from a residential facility on multiple occasions, continued to regularly use controlled substances while on probation, and frequently missed appointments with his probation officers. The Court is unconvinced that Defendant will comply with any condition or combination of conditions which it may impose. Based on the serious nature and circumstances of the offense, and the rebuttable presumption, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is

confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from Defendant's motion for detention hearing (July 8, 2011) to the filing of this Ruling (July 13, 2011) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 13th day of July, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA